## Registration of Lately-Discharged Veterans

*Robert C. Hagan*, county solicitor, for petitioners.

DUMBAULD, P. J., October 5, 1945.—The petition of William J. Graham, John W. Rankin and Paul R. Seeman, County Commissioners of Fayette County, acting as the County Board of Elections, requests the court to define the status, as to right of suffrage in the 1945 November election, of qualified electors lately in active military service, discharged from such service too late to avail themselves of opportunity to register at the time and place fixed by law for registration as civilian voters.

We may regard this petition as the answer of these officials to a petition of an elector so situated for a writ

of mandamus to compel action in that behalf, and assume jurisdiction to answer the inquiry.

We approach the answer to the question with profound conviction that a way is to be found by which the large number of our returning service men and women, who find themselves honorably discharged from a service that has taken them to the remote places of the earth and has brought them face to face with innumerable hardships, and has subjected them to the dangers of world-wide warfare, may cast their ballots for those whom they may choose to be our local officials.

It is inconceivable that those of us who remained at home, pursued our ordinary avocations and availed ourselves of the opportunity to register as civilian voters and those of their fellows who have not as yet received their final discharge, should be qualified to cast ballots at the November election, while those who have earned and received their honorable discharge at a date too late to register as civilians shall find themselves disqualified.

A careful study of the situation leads to the conclusion that these discharged veterans may vote in November, without infringement of any constitutional or statutory regulations.

The right to vote is a right based upon and guaranteed by the Constitution of the Commonwealth of Pennsylvania. Our courts have uniformly protected this right. McDade, P. J., of the Court of Common Pleas of Delaware County, in West v. Delaware County Board of Elections, 32 Del. Co. Rep. 289, eloquently says (p. 291) :

"The Constitution of the Commonwealth of Pennsylvania is a large charter. There is no temptation to widen it by judicial construction. The inclination of the judicial mind is rather to narrow it. But as it is a trust for the people of Pennsylvania, judges have no right, from motives of ease and convenience, to surrender, weaken or obscure, by judicial refinements, one single one of the powers granted.

"A Constitution, however, is not to receive a technical interpretation, like a common law instrument or statute.

" 'It. is to be interpreted so as to carry out the great principles of our government, not to defeat them. . . .' "

The great cardinal principle of our Government is based upon elective franchise, the right of the people to elect their rulers, and to pass upon, at the ballot box, the merits of their respective candidates for official station. This principle lies at the foundation of our constitution. It is the corner stone of the political edifice. It is recognized by our customs and proclaimed by our laws: Chase v. Miller, 41 Pa. 403.

To the Constitution, and laws passed in conformity thereto, we turn for an answer to our problem.

Under the head of Suffrage and Elections, article VIII, sec. 1, of our present Constitution, we find:

"Every citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections, *subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.* (Italics supplied.)

"1. He or she shall have been a citizen of the United States at least one month.

"2. He or she shall have resided in the State one year (or, having previously been a qualified elector or native-born citizen of the State, he or she shall have removed therefrom and returned, then six months), immediately preceding the election.

"3. He or she shall have resided in the election district where he or she shall offer to vote at least two months immediately preceding the election."

Amendment of November 7, 1933, Purdons Constitution, article VIII, sec. 1, page 89.

The constitutional right to vote thus is "subject, . . . to such laws requiring and regulating the registration of electors as the General Assembly may enact".

The General Assembly, by various enactments, has required and regulated the registration of electors.

Broadly speaking, these requirements and regulations, with respect to registration, as they exist at present, divide electors into two classes, civilian and military.

Before the beginning of World War II, all electors residing in cities, boroughs and townships were required to personally register as a qualification for voting. The Permanent Registration Act of April 29, 1937, P. L. 487.

Nonparticipants in military service are still required to be so registered.

The time, place and manner of such registration of civilian electors are fixed by the Amendment of May 15, 1945, P. L. 466.

"Section 16. Day and Hours of Registration; Places of Registration; Use of Polling Places; Payment of Rentals; Use of School Buildings; Public Notice.—

"(a) From and after the first day of May, one thousand nine hundred and thirty-seven, each commission, or any commissioner or a registrar or clerk appointed by the commission, shall, during ordinary business hours, and during such additional hours as the commission shall from time to time prescribe, on each day, except Sunday, holidays, the day of each election and each primary, the *fifty* days next preceding each election and each primary, and the thirty days next following each election and the five days next following each primary, at the office of the commission and at such additional places in the boroughs, towns, and townships as the commission may from time to time designate, in accordance with the provisions of subsection (b) herein, receive personal applications from persons who claim that they are entitled to be registered as electors of any borough, town or township and who appear for registration . . ."

Like laws apply to cities of the different classes in the State.

The exigencies of war prompted our law-making body to exempt such electors as were in the actual military service of their country from the requirement of such personal registration.

By supplement to the Act of 1937, approved May 5, 1944, P. L. (1945) 1445, qualified electors in active military service are, when otherwise qualified, permitted to vote military ballots "regardless of whether such person is registered or enrolled in accordance with law."

In this bit of legislation the intent of the law makers is specifically declared:

"Section 1. The purpose of this supplement is to enable every qualified elector of this Commonwealth in actual military service, as herein defined, during the continuance of the present war and six months thereafter, to vote, when such elector is present in the election district within which he resides on any election day, *regardless of whether such person is registered or enrolled, and this act shall be liberally construed to effectuate such purpose.*" (Italics supplied.) : Act of May 5, 1944, P. L. (1945) 1445, section 1.

This legislation divides the electorate of Pennsylvania, as to voting in the November election, into two classes:

(*a*) Those who on or before September 15, 1945, as civilian electors have personally registered according to law;

(*b*) Those who, before September 15, 1945, by reason of being actually engaged in military service, have not been required to personally register and, because of such military service, have had no opportunity to so register.

Clearly the status of both classes is fixed as of the date of the deadline for personal registration—this year, September 15th.

The civilian having the constitutional qualifications, and having complied with the requirement and regu-

lation as to registration, is legally set for voting at the November election in 1945.

The elector actually engaged in military service to a date, and at a place, that prevented his personal registration, having the constitutional qualifications, is exempted from the necessity of registration and is likewise legally set for voting at the November election.

The frequently repeated expression "in actual military service" so far as the matter of registration is concerned, was necessarily intended by the law makers to mean "in actual military service" at the time and under the circumstances existing when the opportunity to personally register ended — this year, September 15th. So far as voting at the November election in this year is concerned, the process of civilian registration is frozen 50 days before election day. Likewise is the status of the military elector as to registration frozen as of the same date. From that time he is qualified to vote, regardless of registration. Discharge from the fighting force cannot change this registration status. Lack of necessity for further fighting cannot destroy the privilege of further voting. Home, because of the end of the war, the military elector does not doff his right to vote with his uniform. He may not be deprived of his franchise by the fortuitous circumstance that, after the final registration day, which found him still in active service at a point far away from the place for personal registration, the Government discovered that it no longer needed him in the fighting forces. Until there is an actual opportunity to legally register as a civilian his right to vote, regardless of registration, persists.

In construing every act of assembly, we are required to seek the legislative intent. In the legislation hereinbefore referred to, we find provisions relieving all electors in actual military service from the requirement of registration. This privilege is extended to them as a class, as that class exists as to this year's election, on September 15, 1945. That class need not

appear at the polling places and seek registration. The badge of military service is the token of exemption. As of that date, the status as nonregistered voters is firmly established. Clearly the legislature did not intend to terminate that status when the fortunes of war brought an unexpected end to the shooting, and long, hard service of our Army men and women earned for them a speedy discharge, at a time and place when it was physically impossible to enter the civilian class, as to which the books closed on September 15th.

It does not require any stretch of liberal construction to say that unquestionably the legislature intended the nonregistered voting status to continue until the electors could again legally enter the civilian class of registered voters.

We are also admonished to look to the reason for a law that is passed. Here it was found that registration of service men was impractical. The plan for securing soldier registration tried in earlier legislation did not work. Voters from Pennsylvania were scattered upon every continent, "from the Halls of Montezuma to the shores of Tripoli".

The requirement of registration worked hardship on service men and women everywhere. Therefore, the legislature abandoned the attempt to regulate actual registration of men and women in the various armies of the United States. The law makers said to every man and woman engaged in military service, "You may vote regardless of registration".

It is proper to examine the case of an elector still in service on the day that the books closed for civilian registration. He was still on the bead-roll of his country's Army. He could not personally appear before the civilian registrar. His actual location entitled him, under the military ballot law to vote without registration. This situation continues until the date fixed for civilian registration passes. He has borne the burden and heat of warfare long enough to merit discharge.

The Army authorities act upon his case and he is granted his honorable discharge. He comes home to find that there are those who say that his discharge disfranchises him. He cannot get on the list of civilian electors since there is absolutely no authority to put names on that list after September 15th. He cannot vote a military ballot since he is no longer in military service.

We do not agree with those who take that position. We conclude that a proper, perhaps a liberal interpretation of the various acts of assembly does not require a ruling so manifestly unjust and unfair.

We have quoted the enabling acts which permit his voting, while not discharged, without registration. His status as such nonregistered voter is established. His military activity and his actual service have prevented his civilian registration. His discharge cannot under such circumstances, take him out of the class of nonregistered voters. It must perforce continue until he has had opportunity to join the other class. The wartime status must remain until it is physically and legally possible to resume the peacetime status.

To so hold applies the reason for the law, gives effect to the legislative intent, and retains for all our service men and women the precious boon of a free ballot, an incident of our institutions for which they have resolutely faced bullet, bayonet, and bomb.

The legislature has provided a simple way for the practical carrying out of this system. The Act of Assembly of May 5, 1944, P. L. (1945) 1445, section 3, is as follows:

"Whenever any elector shall be present at his place of residence on any day appointed by law for holding any general, municipal or primary election in this Commonwealth, such elector shall be entitled at such time to exercise the right of suffrage; provided a request is made for an official military ballot in the election district in which the elector resides, and such elector has not already voted in such election."

Section 4 of the same act provides:

"Ballots for use by such electors shall be official military ballots as now or hereafter provided by law, and shall be made available by the county boards of election at the various election districts throughout the Commonwealth on the days appointed by law for holding any general, municipal or primary election within this Commonwealth."

Section 5 is in these words:

"The county boards of election shall prepare and deliver to each district election board an adequate supply of official military ballots, envelopes and other supplies as is now or may hereafter be required by law."

Section 6:

'If any such elector is present in the election district in which he resides on election day, he may apply to the district election board for an official military ballot. If he receives and votes such ballot, his name shall be placed on separate lists to be attached to the lists of voters now compiled in accordance with law."

Section 7 defines the manner of voting, including the elector's affidavit, the official jurat and the preparation of the several envelopes.

We quote Section 8:

"The county board of election, upon receipt of such official military ballots, shall safely keep the same with other official military ballots until such time as the members of the county board of election shall canvass, count and dispose of official military ballots in the manner now or hereafter authorized by law.

The county board of election shall post an alphabetically arranged list in a conspicuous place at its office, setting forth the name, residence, the local voting district and ward of every elector who has voted in his local voting district by official military ballot. This list shall be attached to the military file and shall be posted before the day fixed by law for the canvassing of official military ballots. This posted list shall not contain the elector's military address or military organization. . . ."

This last section provides a suggestion for an easy manner of carrying out the routine to be followed by the county board of elections. The board shall, upon application of the elector, at any time before the day of the election, ascertain that he is legally qualified, then place the elector's name on a list containing the residence, the local voting district and the ward in which the elector desires to vote, and a notation that the elector is eligible for a military ballot in such particular voting district. This list may well be called "supplementary military file", and be kept with the military file required by law to be posted.

The remaining simple expedient for the successful operation of the plan would only require that the registration authorities make a separate list of all electors thus placed on the "supplementary military file" in each voting district and deliver such separate list with the district register to the election board in each such election district, with a notation or certificate that each such elector is entitled to receive a military ballot in that election district at the polls on election day, or the registration authorities may execute and deliver to each elector thus placed on the supplementary military file a card or certificate containing the information that the bearer of the card or certificate is eligible to receive a military ballot, such card or certificate to be retained by the elector and presented to the district election board at the polls on election day.

The latter suggestion will permit the placing of names on the supplementary file, and the issue of qualifying cards or letters to and including election day.

It is our considered opinion that, by proceeding in conformity with the foregoing opinion, the county board of elections, conformably to common sense, in simple justice, will be acting entirely within the law.

*Order of court*

Now, October 5, 1945, upon and after consideration, it is ordered and directed that the petition be filed, and

that petitioners proceed in accordance with the fore-going opinion to qualify discharged service men and women as eligible recipients of military ballots for the election to be held on Tuesday, November 6, 1945.